## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHARLENE POWELL,

     Plaintiff,

v.                                                  Civ. No. 15-821 SCY

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

     Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Charlene Powell's Motion to
Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff
disability benefits. ECF No. 17. For the reasons discussed below, the Court will DENY
Plaintiff's motion.

### I.      BACKGROUND

Plaintiff Charlene Powell is a sixty-seven year old female who filed her claim for
disability on July 27, 2012 alleging an onset disability date of July 1, 2012.  Plaintiff alleged that
she is disabled due to congestive heart failure, heart arrhythmia, shortness of breath, and
tightness in her chest. AR 51.  Because the parties are familiar with Plaintiff's medical history,
the following will recount the record and Plaintiff's medical history only to the extent that it is
relevant to the issues currently before the Court.

On June 22, 2012, Plaintiff was admitted to Gila Regional Medical Center with
complaints of shortness of breath, chest tightness, not feeling good, and less energy. AR 110.
Plaintiff was assessed as likely suffering from shortness of breath, possible congestive heart
failure, mild hypertension, and arrhythmia with bigeminy. AR 113.  After a period of

1

observation, Plaintiff was prescribed Lasix, Potassium, Isosorbide Dinitrate, and Simvastatin and then discharged. AR 115. Plaintiff was also directed to follow up with her primary care provider and a cardiologist. AR 348.

Plaintiff's medical records primarily consist of documents pertaining to further treatment arising from this event. Amanda Gray, PA-C, diagnosed Plaintiff with congestive cardiomyopathy with severe diffuse hypokinesis. AR 464. In June 2013, Plaintiff was seen by Mary Hawkins, CNP, at the University of New Mexico Hospital. AR 494. Ms. Hawkins reported Plaintiff's diagnosis as heart failure with reduced ejection fraction. AR 494. Ms. Hawkins reported that Plaintiff was "not having any significant symptomatology of heart failure like she had when she initially presented." AR 496. However, Ms. Hawkins noted that Plaintiff "does still have some lightheadedness" and that Plaintiff reported chest tightness that occurs with activity. AR 496.

Plaintiff sporadically reported experiencing fatigue in visits with medical personnel. For instance, in visits to Hidalgo Medical Services, Plaintiff reported fatigue on May 23, 2013 and "on and off" fatigue on June 14, 2013. AR 124, 128. Further, in a pre-evaluation form before her visit to UNMH in September 2013, Plaintiff indicated that she was experiencing fatigue. AR 154. However, the record also reflects instances in which Plaintiff specifically reported not experiencing fatigue. AR 163, 533.

Plaintiff also reported experiencing fatigue in testimony before Administrative Law Judge Donna Montano (ALJ). At the hearing, Plaintiff testified that her symptoms include chest pain, "pressure on my chest," dizziness, and fatigue. AR 32. Plaintiff testified that due to the fatigue, she cannot get through most days without resting or lying down. AR 35. Plaintiff testified that she regularly takes rest periods three times a day for approximately thirty minutes

per break. AR 35. Plaintiff also indicated in her function report that she had declined some social activities due to fatigue or the physically demanding nature of the activity. AR 273.

Plaintiff filed her claim on July 27, 2012, alleging a disability onset date of July 1, 2012. AR 11. The claim was initially denied on September 21, 2012, and upon reconsideration on June 27, 2013. AR 11. Plaintiff thereafter requested a hearing, which was held on February 2, 2015. AR 11.  On March 27, 2015, the ALJ issued her decision denying Plaintiff's claim. AR 23. Plaintiff appealed the decision to the Social Security Appeals Council, which denied her request for review. AR 1-3. This appeal followed.

## II.    APPLICABLE LAW

### A.  Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

3

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

## B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v.*

*F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

**III.   ANALYSIS**

Plaintiff challenges the ALJ's decision on two fronts.  Plaintiff first argues that the ALJ erred by failing to properly consider Plaintiff's fatigue and its effect on her residual functional capacity. ECF No. 17 at 6. Second, Plaintiff argues that the ALJ erred in finding that Plaintiff had transferable skills acquired from past work that were applicable to other occupations at the sedentary level. ECF No. 17 at 7.  The Court will consider these arguments in turn.

**A.  The ALJ Properly Considered Plaintiff's Complaints of Fatigue**

Plaintiff argues that the ALJ erred in not taking into account her complaints of fatigue in fashioning the RFC.  Plaintiff highlights her testimony that her fatigue requires her to take three to four rest periods a day, generally lasting thirty minutes each.  Plaintiff argues that given the vocational expert's testimony that no competitive employment exists if an individual requires such rest periods, the ALJ's failure to properly consider her complaints of fatigue was detrimental to her claim. ECF No. 17 at 6-7.

The Court disagrees with Plaintiff that the ALJ failed to account for her complaints of fatigue.  In her decision, the ALJ recounted Plaintiff's complaints of fatigue, including Plaintiff's testimony that the fatigue necessitates rest periods up to three times a day. AR 15. After recounting Plaintiff's testimony, including Plaintiff's statements regarding her other alleged limitations, the ALJ discussed Plaintiff's statements that she can prepare meals, clean, do laundry, perform auto maintenance, sweep her patio and porches, and perform light yard work, including weed-eating and watering her trees and shrubs. AR 15. The ALJ further discussed Plaintiff's ability to shop for groceries and to walk and drive.  Finally, the ALJ discussed Plaintiff's reports that she handles stress well.  AR 15.  The ALJ then concluded that, given Plaintiff's reported activities, she "engages in activities that are not limited to the extent one would expect given her complaints of disabling symptoms and limitation[s]." AR 15.

Second, the ALJ concluded that the credibility of Plaintiff's allegations, including her fatigue, was questionable.  AR 16.  In support of this conclusion, the ALJ recounted Plaintiff's employment history after she filed her claim. AR 16. The ALJ highlighted Plaintiff's statements that she left her residential house-cleaning job prior to filing for disability in 2012 because the job became too strenuous in light of her impairments.  AR 16. The ALJ explained, however, that Plaintiff had self-employment earnings in 2013 and reported to her cardiologist that she continued to work part-time cleaning houses in 2014. AR 16. The ALJ ultimately found that this contradiction "subtracted from the overall credibility of the [Plaintiff's] allegations," which included her allegations regarding the extent of her fatigue. AR 16.

Finally, the ALJ found that the objective medical findings in the case failed "to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those

reported in the residual functional capacity statement above."  AR 16. Plaintiff does not specifically challenge this finding.  Nevertheless, without recounting the ALJ's full discussion of the medical findings, the Court notes that the ALJ gave "great weight" to treating physician Dr. Pahl's physical residual functional capacity assessment which opined that Plaintiff can "occasionally and frequently life and carry up to ten pounds, stand and walk for at least two hours in an eight hour workday, sit for about six hours in an eight hour workday, with limitations on her ability to push and pull with her upper extremities, due to shortness of breath." AR 19. Dr. Pahl provided no opinion regarding any limitations due to fatigue.  Furthermore, Plaintiff points to no other medical opinion indicating Plaintiff's fatigue limited her to the extent she alleged.  Accordingly, there is no basis to conclude that the ALJ erred in finding that the medical evidence did not support Plaintiff's allegations regarding her limitations.

In sum, the ALJ properly addressed Plaintiff's fatigue in concluding that her allegations regarding her limitations were neither supported by her testimony regarding her capabilities or the medical evidence.  Plaintiff does not specifically challenge these findings.  Instead, Plaintiff summarily argues that Plaintiff's allegations of fatigue should have been addressed in the RFC. Plaintiff's argument invites the Court to reweigh the evidence, which the Court cannot do. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (stating that the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'"). The Court concludes that substantial evidence supports the ALJ's rejection of Plaintiff's self-reported and unsubstantiated allegations that she is unable to work due to fatigue.

## B.  The ALJ Properly Found Transferable Skills

At the hearing, Plaintiff described her previous work as an optician. AR 33. Plaintiff testified that she filled prescriptions for the doctors, fitted the patients with lenses, performed

eyeglass repair, and handled paperwork related to choosing lenses and add-ons for glasses.

Plaintiff testified that her primary duty was customer service. AR 33. The VE testified that

Plaintiff's past work classified as two separate jobs under the *Dictionary of Occupational Titles*

(DOT). The VE testified, however, that both were "light exertional level with an SVP: 7" and are

"light and skilled occupations." AR 38. When asked whether there would be transferable skills to

other work at Plaintiff's age, the VE testified that "[t]here are skills that would transfer to the

sedentary level at the semiskilled level."  The VE's first example was that of receptionist, DOT

number 237.367-010, sedentary exertional level, SVP 3, semiskilled. AR 41. The VE's second

example was clerical sorter, DOT number 209.687-022, sedentary extertional level, SVP 3,

semiskilled.

Social Security regulations provide that "[i]f you are of advanced age and you have a

severe impairment(s) that limits you to no more than sedentary work, we will find that you have

skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is

so similar to your previous work that you need to make very little, if any, vocational adjustment

in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).  It

is undisputed that this regulation applies to Plaintiff.  Citing this regulation, Plaintiff argues that

the record does not support the vocational expert's (VE) conclusion that Plaintiff would require

very little adjustment to clerical supporter or receptionist and that her former occupation

involved different tools, a different work process, and a different work setting or industry. ECF

17 at 8-9; ECF 22 at 2.  The Court, however, rejects this argument and finds that testimony from

the VE constitutes substantial evidence to support the ALJ's decision that considering Plaintiff's

age, education, work experience, and residual functional capacity, Plaintiff had acquired work

skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy.  AR 21.

Because clerical sorter positions exist in sufficient numbers, the Court will limit its present analysis to whether substantial evidence supports the ALJ's conclusion that skills from Plaintiff's previous work would allow her to perform work as a clerical sorter. *See* AR 41 (VE testimony that 253,000 people are employed nationally as clerical sorters).  Plaintiff correctly notes that the position of clerical supporter does not require her to use many of the same tools she used in her former position as an optician.  The relevant question, however, concerns not what tools Plaintiff may no longer use but, instead, what new tools she must now learn to use. Plaintiff does not identify any new tools that Plaintiff would have to learn to use as a clerical sorter.  Nor does she attempt to explain how work as a clerical sorter involves work processes that she could not perform or how it constitutes work in a different industry that she could not perform.  Instead, she simply states that the position of clerical supporter requires different tools, work processes, and industry.  This is not enough.

The point Plaintiff fails to address, and the one the Court finds persuasive, is that work as a clerical sorter would require Plaintiff to go to a much easier, simpler job.  After the ALJ clarified the analysis under 20 C.F.R. § 1568(d)(4), the VE testified that

> both of these jobs would be easier because there would be fewer things that she would have to attend to, where she was involved in inventory and billing, and ordering, and waiting on people, and adjusting glasses…in the two jobs that I have selected, the receptionist would be making appointments for people and welcoming them, getting them lined up for whatever service they are there to receive[.] [A]nd with clerical sorter, in her past job, you've got to keep track of which prescription goes with which people and goes to which company that's going to grind the glasses and keep track of that. And when materials come back in, all of his has to be kept—a good record of all this has to be kept in order to do the proper billing[.]

AR 44.  The VE indicated that the clerical sorter position would require minimal adjustment because it was "far less complicated…than the sorting and keeping track of everything that was required and multiple details that needed to be done in the office of an optician." AR 47. The VE clarified that while clerical sorter was in a different work setting or industry than the eyeglass industry, it was a "much less complex setup."  AR 47. Ultimately, the VE opined that Plaintiff "would require very little, if any, change in order to function adequately in those jobs." AR 48. The VE further testified that in his opinion, Plaintiff would need to make very little, if any, occupational adjustment in terms of tools, work processes, work settings, or the industry to these positions. AR 44.

Given the VE's testimony, the Court concludes that it supports the determination that Plaintiff could perform these jobs at a high degree of proficiency with a minimal amount of job orientation.  As found by the ALJ, the VE opined as to the similarities between Plaintiff's previously acquired skills and the skills required as a receptionist and clerical sorter. The VE further explained, in regard to the position of clerical sorter, why, in his opinion, the demands of this position were less complex than Plaintiff's previous work. Plaintiff raises no specific challenge as to why her previously acquired skills would not transfer to the clerical sorter position.  Finding no contrary evidence in the record, the Court rejects Plaintiff's argument that conversion to the position of clerical supporter would require an impermissible adjustment.

The Court also rejects Plaintiff's implicit argument that the regulations state that someone of Plaintiff's age cannot adjust to a job that requires a change in tools, work process, work settings, or industry. In *Jensen v. Barnhart*, 436 F.3d 1163, 1166 (10th Cir. 2005), the Tenth Circuit rejected an argument that each category of "same tools, work

processes, or work settings, or industry" must be met in order to find transferability of skills. Instead, as indicated by SSR 82-41 the relevant determination is whether the claimant could perform "these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." Moreover, SSR 82-41 specifically notes that "where job skills have universal applicability across industry lines, e.g., clerical professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC." The record indicates that Plaintiff's former work as an optician is the type of job that allows her to transfer skills in a different industry with little, if any, vocational adjustment.

## IV.     CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's denial of Plaintiff's claim for disability benefits.

**IT IS SO ORDERED.**

UNITED STATES MAGISTRATE JUDGE
Sitting by Consent

11